IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGE PITTAS, )
)
)
       Plaintiff, )
)
  -vs- )
       Civil Action No.  06-65
)
HARTFORD LIFE INSURANCE COMPANY, )
)
)
      Defendant. )

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

Pending are Cross-Motions for Summary Judgment.  (Docket Nos. 30 and 32). The parties have responded thereto. Based on my opinion set forth below, Plaintiff's Motion for Summary Judgment (Docket No. 30) is denied and Defendant's Motion for Summary Judgment (Docket No. 32) is granted in part and denied in part.

### I. BACKGROUND

Defendant, Hartford Life Insurance Company, issued a group policy of accident insurance to AAA West Penn/West VA/South Central OH ("AAA") for AAA members ("the Policy").  The Princeton Corporation ("Princeton") serves as the administrator of the Policy.  The Policy provides accidental hospital indemnity benefits and recuperation benefits.  An insured may receive recuperation and

accident hospital indemnity benefits when he or she is "Confined during one or more periods of Hospital Confinement if the Confinement is due to Injury received in a Covered Accident as defined." (Docket No. 34-2, p. 14, Ex. HLI 00013). A claimant or beneficiary under the Policy must give Defendant written notice of a claim within 30 days after a covered loss begins or as soon as reasonably possible. The Policy provides that "Daily Benefit Amounts for this benefit are shown in the Schedule." (Docket No. 34-2, p. 14, Ex. HLI000013). Defendant "will pay any daily, weekly or monthly benefit due: a) on a monthly basis, after we receive the proof of loss, while the loss and our liability continue; or b) immediately after we receive the proof of loss following the end of our liability. We will pay any other benefit due immediately, but not later than 60 days, after we receive the proof of loss." *Id.* at p. 18. Proof of loss is considered "[a]ll of the information or documentation that the examiner would need in order to make a determination on the claim." Docket No. 34-7, p. 7.

Plaintiff, George Pittas, has been a member of AAA since 1971. In 2002, AAA advised Plaintiff and others who had been AAA members for six or more years that they were eligible to enroll in the Policy ("Enrollment Offer Letter"). The Enrollment Offer Letter describes the two plans provided by the Policy, the Basic Plan and the Best Plan, and noted that Plaintiff could "pick the plan that fit[] [his] family's needs and budget." Docket No. 34-8, p. 7. The Enrollment Offer Letter explains that the Basic Plan provides "**$300 a day in hospital benefits, $300 in outpatient benefits** *and* **$300 a day in recuperation benefits.** All of this for the specially-arranged

2

premium of just $34.00 semi-annually - or just $20 more to protect the whole family." *Id.* (emphasis in original). The Enrollment Offer Letter further explained that Plaintiff could obtain "double the security" through the Best Plan which would increase each benefit described above to $600.00 per day "for the specially arranged premium of just $67.00 semi-annually...." *Id.* On June 14, 2002, Plaintiff completed the Enrollment Form, elected coverage under the Basic Plan, and remitted a premium payment of $34.00 to the Policy administrator. The policy period commenced on July 1, 2002, with annual renewals.

At some point, Princeton sent to Plaintiff a "Schedule of Benefits." (Docket No. 31-22, Ex. 21). Said "Schedule of Benefits" states that the coverage benefits are $300.00 a day, which is reflective of the Basic Plain. *Id.* At the bottom of the page, however, it indicates that members of AAA for 6 years or more are entitled to $600.00 a day. *Id.* In April of 2004, it came to the attention of Princeton that the form was incorrect and Princeton sent out a correct form that reflected a daily benefit amount of $300.00 in both places. (Docket No. 42-2, ¶16). Princeton then sent Plaintiff a letter indicating that under the Basic Plain the daily benefit is $300.00 a day. (Docket No. 34-4, p. 2, Ex. HLI 00174).

On March 16, 2003, Plaintiff was involved in a single motor vehicle accident on Interstate 79 in Braxton County, West Virginia. Plaintiff sustained serious injuries including but not limited to traumatic brain injury, right shoulder and arm fractures, leg fractures, spinal fractures, multiple rib fractures, renal failure, and was in a coma for several months. He was a patient at the following facilities: Braxton County

3

Memorial Hospital, Charleston Area Medical, UPMC Presbyterian, Greenery Specialty Care Center ("Greenery"), Canonsburg General Hospital, Kindred Hospital, HCR Manor Care, and Healthsouth Harmarville Rehabilitation Hospital ("Healthsouth Harmarville") where Plaintiff remained until he was released on October 29, 2003.

On March 13, 2004, Ms. Mino submitted a Statement of Claim on behalf of Plaintiff to Princeton for benefits under the policy.  Princeton forwarded the Statement of Claim to Defendant on March 16, 2004.  On April 5, 2004, Ms. Mino forwarded a required Attending Physician Statement to Princeton which forwarded it to Defendant.

Plaintiff's claim was assigned to Joyce Desorcey, a claims examiner for Defendant.  On June 16, 2004, Ms. Desorcey wrote to Braxton County memorial Hospital requesting a copy of Plaintiff's toxicology report.  Because Plaintiff was involved in a single motor vehicle accident under good weather conditions with no explanation as to what might have caused the accident, Defendant needed to determine whether other factors contributed to the accident.  Accordingly, Hartford requested a copy of the toxicology report to ensure that his claim was not subject to the intoxication exclusion under the Policy.

Subsequently, Braxton County Memorial Hospital requested that an authorization form be completed by Plaintiff before the hospital would release any of Plaintiff's medical records to Defendant.  Defendant forwarded that form to Plaintiff on July 21, 2004, which he signed on July 28, 2004, and returned to Defendant.  On October 5, 2004, Defendant finally received Plaintiff's toxicology

4

report.  The toxicology report stated that Plaintiff's ethanol level was "10 mg/dL." Because the toxicology report completed Plaintiff's proof of loss, Hartford had sixty days, or until December 4, 2004, to make a determination as to whether Plaintiff was entitled to benefits.

Ms. Desorcey reviewed the toxicology report and, when calculating his blood alcohol level, erroneously concluded that Plaintiff had a .1, instead of a .01, blood alcohol count.  She noted that "VA limit/level = .1 or more is considered legally intoxicated."   Accordingly, Ms. Desorcey prepared a denial letter, which she submitted to Lillian Cremin.  Before approving the letter, Ms. Cremin reviewed both the denial letter and the toxicology report.  Ms. Cremin incorrectly interpreted the 10 value - "instead of 10mg, I read it as a 10g."  Consequently, Ms. Cremin made a mistake in reading the toxicology report.   Based on the same, Plaintiff's claim was denied on November 22, 20004, due to intoxication.

On December 15, 2004, Stanley Greenfield, Esquire, counsel for Plaintiff sent an authorization signed by Plaintiff allowing Defendant to release information regarding Plaintiff's claim.   On December 21, 2004, Defendant forwarded the requested information to Mr. Greenfield.

On January 3, 2005, Plaintiff appealed Defendant's decision.  The appeal letter explained that an error had been made with respect to a conversion of Plaintiff's toxicology results and that Plaintiff's blood alcohol content was .01, not .1, which is within the legal limit in West Virginia.  Joyce Palmisano, who was assigned to handle the appeal, forwarded the toxicology report to Kathleen Bell, a consulting nurse,

because Ms. Palmisano was not certain how to read the report.  In an e-mail dated January 20, 2005, Ms. Bell confirmed that Plaintiff was not legally intoxicated.  As a result, benefits were payable to Plaintiff under the Policy.

After receiving this information from Ms. Bell, Ms. Palmisano contacted Mr. Greenfield to inform him that the denial would be reversed and benefits would be paid.  Defendant confirmed this conversation in a letter dated January 25, 2005.  In that letter, Defendant confirmed that Plaintiff was entitled to $300.00 per day per benefit.  On January 31, 2005, Defendant paid Plaintiff $60,000.00 representing payment of 100 days of accident hospital indemnity benefits at $300.00 per day and 100 days of recuperation benefits at the same rate.  On February 4, 2005, in response to a February 2, 2005, request from Mr. Greenfield, Defendant explained in writing the basis for the $60,000.00 payment.  Defendant paid Plaintiff for his stays at all of the various facilities, except Greenery, HCR Manor Care, and Healthsouth Harmarville.  On May 5, 2005, Mr. Greenfield submitted a second claim for benefits to Defendant on Plaintiff's behalf and provided the final paperwork for that claim on May 27, 2005.  Four days later, Defendant paid Plaintiff $2,400.00 for his second confinement, which represented $300.00 per day for four days for each benefit.

Plaintiff initiated this action on December 8, 2005, in the Court of Common Pleas of Allegheny County, asserting claims for breach of contract and bad faith.  With respect to the breach of contract claim, Plaintiff asserted that Defendant breached its contract by: 1) failing to pay claims within 60 days of proof of loss; 2) failing to pay claims for Plaintiff's stays at HCR Manor Care, Greenery, and

Healthsouth Harmarville; and 3) failing to pay Plaintiff a benefit of $600.00 per day per benefit as of July 1, 2003.  Plaintiff made the same assertions with respect to the bad faith claim and also asserted that the initial denial on the basis of intoxication was made in bad faith.

This case was removed here on January 13, 2006.  (Docket No. 1).  On March 1, 2006, Plaintiff filed an Amended Complaint removing all claims related to Greenery. (Docket No. 7).  In addition, Plaintiff also asserted in the Amended Complaint that he was entitled to $600.00 per day benefit from the date of the accident.

During the course of the litigation, Defendant reinvestigated the issue of whether Healthsouth Harmarville was a "hospital" as defined by the Policy. Healthsouth Harmarville again informed Defendant that it does not provide surgical treatment on site.  This time, however, Healthsouth Harmarville informed Defendant that its patients could obtain surgical treatment at another facility within the Healthsouth network.  Because a "hospital" is "an institution that ...operates facilities for medical and surgical diagnosis and treatment,"  Defendant concluded that Healthsouth Harmarville is a hospital under the policy (even if the particular facility where Plaintiff stayed would not otherwise qualify for coverage) and, therefore, the claim for benefits at Healthsouth Harmarville was payable.  On October 11, 2006, Defendant paid Plaintiff for his stay at Healthsouth Harmarville at the $300.00 per benefit per day rate.

Two days later, on October 13, 2006, Plaintiff dismissed all claims against Defendant relating to Plaintiff's stays at HCR Manor Care.

7

On February 7, 2007, I denied Plaintiff's Motion to Amend his Amended Complaint to reassert all claims related to Greenery.  (Docket No. 47).  As a result, all claims regarding Plaintiff's care at Greenery are no longer a part of Plaintiff's case.

The parties have filed Cross Motions for Summary Judgment.[1]  (Docket Nos. 30 and 32).  The parties have filed responses thereto.  The issues are now ripe for review.

## II.  LEGAL ANALYSIS

### A.  LEGAL STANDARD OF REVIEW[2]

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

---

[1]Plaintiff's first question presented to me in his Motion for Summary Judgment is "whether Greenery Specialty Care Center is a hospital as defined under the policy as to allow for hospital and recuperation benefits to be due Plaintiff under the contract in question."  (Docket No. 31, pp. 6-9).  Since all claims related to Plaintiff's care at Greenery have been removed from Plaintiff's Amended Complaint, this issue is moot.  As a result, I decline to consider the issue.

[2]In his brief, Plaintiff states that the legal standard is governed by Rule 12(c) of the Federal Rules of Evidence.  (Docket No. 31, p. 6).  Rule 12(c) governs motions for judgment on the pleadings.  *See,* F.R.C.P. 12(c).  Plaintiff and Defendant have filed cross motions for summary judgment.  (Docket Nos. 30 and 32).  Motions for summary judgment are governed by Rule 56 of the Federal Rules of Evidence.  The standard of review for a motion for summary judgment is completely different from the standard of review for a motion for judgment on the pleadings.  *Compare,* F.R.C.P. 12(c), *with* F.R.C.P. 56.  Consequently, I find that Plaintiff has employed the incorrect standard of review in arguing his motion.  Nevertheless, I will consider Plaintiff's remaining arguments applying the correct standard of review set forth in Rule 56.

will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id*. at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988), *quoting, Celotex*, 477 U.S. at 322.

B.  BREACH OF CONTRACT

Plaintiff argues that Defendant breached the contract in failing to pay a $600.00 daily benefit amount rather than a $300.00 daily benefit amount.  (Docket No. 31, pp. 9-10, Docket No. 41, pp. 8-9). Defendant asserts that the per day benefits were $300.00 per day.  (Docket No. 33, pp. 16-19, Docket No. 38, pp. 5-7).  After a review of the evidence as submitted, I find there is no genuine issue of material fact that the daily benefit due under the Policy was $300.00 a day.

Plaintiff received the Enrollment Offer Letter.  There is no dispute that Plaintiff completed the Enrollment Form, specifically elected coverage under the Basic Plan, and remitted a premium payment of $34.00 to the Policy administrator. (Docket No. 34-8; Docket No. 35, ¶15; Docket No. 40, ¶15).  The "Schedule" of the Policy is set forth in pages two through six of the Policy.  *Id.* at pp. 3-7, Ex. HLI00002-HLI00006).  According to the Schedule of the Policy, Plaintiff is a Class 1 member.[3] (Docket No. 34-2, Ex. HLI 00002).  The Schedule of the Policy provides that the daily benefit amount under the Basic Plan is $200.00 per day. *Id.* at Ex. HLI 00004.  "Benefit Increases" for Class 1 members under the Schedule state as follows: "The benefits amounts payable to a Covered Person are based on the length of an Eligible Person's membership in an AAA Club.  Benefit amounts will be increased as stated below based on the Eligible Person's consecutive years of membership in any AAA Club (without interruption) as of the date of a covered Injury." *Id.*  There is no dispute

---

[3] Under the Policy, a Class 1 member includes all members, in good standing, of the Policyholder who: a) reside in the United States; and b) have initially enrolled for coverage under this Policy prior to October 1, 2002.  (Docket No. 34-2- Ex. HLI 00002).  It is undisputed that Plaintiff enrolled prior to October 1, 2002.  (Docket No. 34-8; Docket No. 35, ¶15; Docket No. 40, ¶15).

that Plaintiff had been a member of AAA since 1971.  Thus, according to the Benefit Increases under the "Schedule" of the Policy, Plaintiff was entitled to 150% of the $200.00 daily benefit, a $300.00 daily benefit.  *Id.*  Consequently, I find pursuant to the clear and unambiguous language of the Policy, there is no genuine issue of material fact that Plaintiff was entitled to a daily benefit of $300.00 for any confinement due to an injury received in a covered accident.[4]

In opposition, Plaintiff attempts to argue that he is entitled to summary judgment because "the contract clearly and unambiguously states 'The Benefit Amount is stated in the *attached* schedule.'  (See Exhibit 23)  The schedule attached to the policy sold and issued to Plaintiff was the schedule that will allow for $600/day benefits."  (Docket No. 31, p. 10; Docket No. 41, p. 9) (emphasis added).  In other words, Plaintiff argues that a document titled "Schedule of Benefits" (Exhibit 21) that was sent to him by Princeton entitles Plaintiff to a daily benefit amount of $600.00.  (Docket No. 31, p. 9; Docket No. 41, p. 8)  This argument is flawed.  To begin with, Plaintiff misquotes Exhibit 23.  The Policy does not state "The Benefit Amount is stated in the attached schedule."  Rather, the Policy states "The Daily Benefit Amounts for this benefit are shown in the Schedule."  (Docket No. 31-24, p.2).  Furthermore, Exhibit 23, as provided by Plaintiff, is only one page of the Policy.  When I review the entirety of the Policy, it is clear that the "Schedule" referred to

---

[4]The policy pays "the Daily Benefit amount when a Covered Person is Confined during one or more periods of Hospital Confinement if the Confinement is due to Injury received in a Covered Accident as defined."  (Docket No. 34-2, p. 14, Ex. HLI00013).  In other words, the daily benefit amount payable for a confinement is based on the policy in place at the time of the accident.  *Id.*

in the Policy is the "Schedule" section within the Policy, not a schedule "attached" to the Policy.  Consequently, Plaintiff's entire argument regarding an "attached schedule" is simply incorrect.  As set forth above, according to the clear and unambiguous language of the "Schedule" of the Policy, the daily benefit amount under the Basic Plan, to which there is no dispute was the Plan Plaintiff was enrolled under, was a total of $300.00 per day.  (Docket No. 34-2, Ex. HLI 00004).  Thus, since there is no ambiguity in the Policy, there is no need to go beyond the Policy to interpret the same; and, therefore, Plaintiff's discussions surrounding the "Schedule of Benefits" sent to Plaintiff is irrelevant. As a result, I find no merit to Plaintiff's argument in this regard.

Additionally, Plaintiff argues that a handwritten note calculating benefits owed to Plaintiff at a rate of $600.00 is evidence that the daily benefit amount was $600.00.  (Docket No. 31, p. 10).  I disagree.  A handwritten note has no bearing on what the Policy provided when the Policy was clear and unambiguous. "In construing the policy, if the words of the policy are clear and unambiguous, the court must give them their plain and ordinary meaning." *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 220 (3d Cir. 2005), *citing, Pac. Indem. Co. v. Linn,* 766 F.2d 754, 760-61 (3d Cir. 1985).  Therefore, since there is no dispute that Defendant paid Plaintiff for his covered injury at a benefit level of $300 per day, I find there is no genuine issue of material fact that Defendant did not breach its contract with Plaintiff. Consequently, I find that summary judgment in favor of Defendant is warranted on Plaintiff's breach of contract claim with regard to the daily benefit amount due

under the Policy.

Plaintiff's Amended Complaint also asserts a breach of contract claim for failing to pay the claims within 60 days of proof of loss.  (Docket No. 7).  The first issue raised by Defendant is whether it is entitled to summary judgment  where it made a determination on Plaintiff's claim within 60 days of receiving proof of loss. (Docket No. 33, p. 12-13).  In response, Plaintiff's suggested response is "Yes, however Defendant was not timely in obtaining the records and also failed to abide by Pennsylvania law by informing Plaintiff as to the reasons for delay in payment. (Docket No. 41, p. 1-3).  In other words, Plaintiff agrees that when all of the documents necessary that would comprise the proof of claim were obtained, Defendant made a determination within 60 days.  *Id.*   The qualifying statement following the suggested response of "Yes" goes to bad faith and not to the breach of contract claim.  *Id.*  Consequently, I find that there is no genuine issue of material fact that Defendant did not breach the contract when it paid the claim within 60 days of the proof of loss.[5]

C.  BAD FAITH, 42 PA. C.S. §8371

Plaintiff asserts that Defendant acted in bad faith in violation of 42  Pa.C.S.A.

---

[5]Plaintiff's Amended Complaint also asserts a breach of contract claim for failing to pay for Plaintiff's confinement in HCR Manor Care and/or Healthsouth Harmarville.  (Docket No. 7).  As noted in the background section, Plaintiff has voluntarily withdrawn its claims regarding HCR Manor Care. Consequently, all claims related to HCR have been removed from the case.  Additionally, as noted in the background section, Defendant eventually paid Plaintiff for his stay at Healthsouth Harmarville.  Thus, as is evident from Plaintiff's failure to mention the breach of contract claim regarding Healthsouth Harmarville in his Motion for Summary Judgment, Plaintiff's breach of contract claim with regard to Healthsouth is removed from the case, as well.

§8371.[6] (Docket No. 7, Amended Complaint, Count II). Section 8371, does not define the term "bad faith." *Id.* Nevertheless, the Third Circuit has predicted that the Pennsylvania Supreme Court would define the term as set forth in *Terletsky v. Prudential Property and Casualty Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680 (1984). *Keefe v. Prudential Property and Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir.2000). In *Terletsky*, the court defined "bad faith" as follows:

> "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty ( i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky*, 649 A.2d at 688, *quoting* Black's Law Dictionary 139 (6th ed.1990) (citations omitted). Thus, to recover on a bad faith claim, the insured must prove: (1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim. *Northwestern Mut. Life Ins. Co. v. Babayan,* 430 F.3d 121, 137

---

[6]Section 8371 provides as follows: "§ 8371. Actions on insurance policies

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371.

(3d Cir. 2005); *Keefe*, 203 F.3d at 225. The insured must prove these elements by clear and convincing evidence. *Babayan,* 430 F.3d at 137; *Terletsky*, 649 A.2d at 688.  "At the summary judgment stage, the insured's burden in opposing a summary judgment motion brought by the insurer is 'commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial.'" *Babayan,* 430 F.3d at 137, *citing, Kosierowski v. Allstate Ins. Co.,* 51 F.Supp.2d 583, 588 (E.D.Pa.1999).

In this case, Plaintiff has asserted that Defendant acted in bad faith: 1) in failing to timely obtain records and failing to inform Plaintiff as to reasons for delay in payment; 2) in initially denying benefits based on intoxication; 3) in failing to pay $600 daily benefits rather than $300.00 daily benefits; and 4) in initially denying benefits for Plaintiff's stay at Healthsouth Harmarville. *See,* Docket No. 7, Amended Complaint, Count II; *see also,* Docket No. 41, pp. 1-8 and Docket No. 31, pp. 10-16. With regard to the first claim of bad faith, Plaintiff alleges that Defendant did not act in a timely manner in obtaining the records after receiving notice of the claim on March 13, 2004.  Specifically, Plaintiff asserts that taking over seven months, until November 22, 2004, when it initially denied the claim, is bad faith.  (Docket No. 41, pp. 2-3).  A delay of seven months after receiving notice of the claim, without more, however, is not clear and convincing evidence of bad faith.  In fact, the evidence, is to the contrary.

As admitted by Plaintiff, the evidence indicates that the toxicology report is part of the proof of loss.  (Docket No. 35, ¶30; Docket No. 40, ¶30).  On June 16, 2004,

Defendant requested a copy of the toxicology report from Braxton County Memorial Hospital. (Docket No. 35, ¶¶24, 25; Docket No. 40, ¶¶24, 25). Subsequently, Braxton County Memorial Hospital requested that an authorization form be completed by Plaintiff before it would release Plaintiff's medical records to Defendant. Defendant forwarded that form to Plaintiff on July 21, 2004, which he signed on July 28, 2004, and returned to Defendant. (Docket No. 35, ¶28; Docket No. 40, ¶28). On October 5, 2004, Defendant finally received Plaintiff's toxicology report. (Docket No. 35, ¶29; Docket No. 40, ¶29). Thus, the evidence shows efforts by Defendant to obtain the toxicology report to complete the proof of loss. Once the report was obtained, Defendant issued its decision on November 22, 2004, well within the sixty days required under the Policy. (Docket No. 35, ¶30; Docket No. 40, ¶30). There is no indication, evidence, or inference of conduct that imports a reckless disregard or bad faith.

Plaintiff also indicates that Defendant acted in bad faith in failing to inform Plaintiff of the reasons for delay in their decision in light of the fact that three letters from Plaintiff's attorney had gone unanswered. (Docket No. 41, pp. 2-3; Docket No. 31, p.12 and Exhibits 6-8). For support of its position, Plaintiff directs this court to Pennsylvania's Unfair Insurance Practice Act ("UIPA"), 40 Pa. C.S. § 1171.1, *et seq.*, and/or the regulations promulgated thereunder, the Unfair Claims Settlement Practices regulations ("UCSP"), 31 Pa.Code § 146.1, *et seq.* With regard to the UIPA and the UCSP, the Third Circuit has held that:

> Prior to Terletsky, the Pennsylvania Superior Court had
> looked to the UIPA and the UCSP to give content to the

concept of bad faith as used in 42 Pa. Cons.Stat. § 8371. *See, e.g., Romano v. Nationwide Mutual Fire Insurance Company*, 435 Pa.Super. 545, 646 A.2d 1228 (1994). Terletsky did not, however, and it is apparent from a comparison of the bad faith standard it adopted with the provisions of the UIPA and the UCSP that much of the conduct proscribed by the latter is wholly irrelevant to whether an insurer lacks a reasonable basis for denying benefits and, if so, whether it knew or recklessly disregarded that fact.

It necessarily follows that a violation of the UIPA or the UCSP is not a per se violation of the bad faith standard and that it is only the Terletsky standard itself that allows one to determine whether a violation of the former is of any relevance in a case like the one before us....

[T]the majority of the provisions [of the UIPA] go toward establishing the timing of investigations and payment of claims. The remaining provisions simply require normal good business practices. Moreover, to constitute "unfair claim settlement or compromise practices," an insurer has to commit or perform the acts "with such frequency as to indicate a business practice." *Id.* at § 1171.5(10).

*Dinner v. United Services Auto. Ass'n Cas. Ins. Co.,* 29 Fed.Appx. 823, 827-28 (3d Cir. 2002). While it appears as though two of the three letters appear to have gone unanswered,[7] there is no evidence that this was a common practice of Defendant's so as to make an inference that Defendant acted with bad faith. *Employers Mut. Cas. Co. v. Loos,* No. CV-05-0355, 2007 WL 665841, *14 (W.D.Pa.,2007)("[M]ere failure to respond to a letter cannot alone suffice to establish the existence of statutory bad faith.").

Consequently, I find that Plaintiff has failed to meet his burden of clear and convincing evidence of bad faith in failing to timely obtain records and failing to

---

[7]The last letter, dated November 12, 2004, appears to be answered on November 22, 2004, when Defendant denied the claim. *Compare,* Docket No. 31, Ex. 8, *with*, Docket No. 34-3, HLI 00155-00156.

inform Plaintiff as to reasons for delay in payment.  Therefore, summary judgment in favor of Defendant on this issue is warranted.

Plaintiff next asserts that Defendant acted in bad faith in initially denying benefits based on intoxication, when in fact, Plaintiff was not intoxicated as indicated on the toxicology report.  (Docket No. 31, pp. 11-13; Docket No. 41, pp. 4-5). To that end, Plaintiff asserts that Lillian Cremin, the person who made the determination that Plaintiff was intoxicated, has no training on how to interpret a toxicology report and did not have a manual to consult.  (Docket No. 31, p. 11; Docket No. 41, pp. 4-5).  Plaintiff's assertion is incorrect regarding Ms. Cremin's training.  A review of Ms. Cremin's deposition reveals that she was taught how to read toxicology reports from different managers or trainers at Aetna, her prior employer, and Defendant.  (Docket No. 41, Ex. 1, pp. 45-46).  Furthermore, while there was no manual to consult on reading toxicology reports, Defendant had a nurse available if there were any questions. *Id.* at pp. 46-47.  Nonetheless, Ms. Cremin did not consult the nurse.  Additionally, the police report contained no information to lead to the conclusion that Plaintiff was intoxicated at the time of the accident. (Docket No. 31, p. 11).  It is admitted that Ms. Cremin's interpretation of the toxicology report was a "mistake."  (Docket No. 40, ¶35).  This "mistake" may be interpreted as mere negligence or as a reckless disregard.  Consequently, I find there is a genuine issue of material fact such that summary judgment is not warranted on Plaintiff's bad faith claim regarding Defendant's denial based on intoxication.

Next, Plaintiff argues that Defendant acted in bad faith in failing to pay $600

daily benefits rather than $300.00 daily benefits.  (Docket No. 31, pp. 11, 13; Docket No. 41, pp. 8-9).  A plaintiff cannot prevail on a bad faith claim, however, where there is no breach of an underlying contractual obligation.  *Younis Bros. & Co. v. Cigna Worldwide Ins. Co.,* 899 F.Supp. 1385, 1396-97 (E.D. Pa. 1995); *Pizzini v. Am. Int'l Specialty Lines Ins. Co.,*  249 F.Supp.2d 569, 570-71 (E.D. Pa. 2003). As I decided above, Defendant is entitled to summary judgment on the issue that the Policy provides for a $300.00 daily benefit.  Defendant paid Plaintiff based on a $300.00 daily benefit.  Thus, Plaintiff's underlying breach of contract claim for a $600.00 daily benefit failed on its merits.  Therefore, I find no genuine issue that Defendant did not act in bad faith in paying the $300.00 daily benefit rather than a $600.00 daily benefit.  Consequently, summary judgment in favor of Defendant is warranted on the issue of whether Defendant acted in bad faith in failing to pay $600.00 daily benefits rather than $300.00 daily benefits.

Finally, Plaintiff asserts that Defendant acted in bad faith in making its initial determination to deny Plaintiff's claim for his stay at Healthsouth Harmarville. (Docket No. 31, pp. 11, 13-15; Docket No. 41, pp. 5-8).  To that end, Plaintiff asserts that the same employee who initially made the determination that Healthsouth Harmarville did not qualify, made just one more phone call and looked on the internet to eventually conclude that it did qualify.  According to Plaintiff, all of this information could have been available to Defendant at the time it initially denied the claim if it had done a proper investigation, and that if proper managerial staff was involved such unreasonable and reckless bad faith conduct would not have

occurred.  *Id.*

In response, Defendant asserts that its conduct was not in bad faith because the information it had at the time it made its initial determination was that Healthsouth Harmarville did not meet the Policy definition of a "hospital." (Docket No. 33, p. 15-16).  Specifically, Defendant asserts that initially to determine whether Healthsouth Harmarville was a hospital under the policy, Ms. Palmisano reviewed the information contained in the claims file and researched the facility on the internet. *Id.*  Although the website indicates that Healthsouth Harmarville is a licensed hospital, the website "seem[ed] to speak of rehabilitation..." and that is what caused her to then call the facility.  *Id.*  Ms. Palmisano placed the telephone call and was told that Healthsouth Harmarville "did not have surgical treatment."  *Id.*  Based on the same, Defendant initially denied the claim for Healthsouth Harmarville.   After the lawsuit was filed, Defendant reinvestigated the issue and Ms. Palmisano placed another call to Healthsouth Harmarville.  This time she was informed that it did not provide "surgical treatment on site..., [but that] it is an institution that ...operates facilities for medical and surgical treatment and diagnosis."   Based on this new evidence, Defendant reversed its decision and deemed Healthsouth Harmarville to be a "hospital."

Based on the evidence of record, I find there is a genuine issue of material fact as to whether Defendant performed an adequate investigation such that it had reasonable basis for denying benefits under the policy and  if it knew of or recklessly disregarded its lack of a reasonable basis in denying the claim for care at

Healthsouth Harmarville.  Consequently, summary judgment on this issue is not warranted.[8]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER OF COURT

**AND NOW,** this  **17th**  day of May, 2007, after careful consideration of the Cross- Motions for Summary Judgment (Docket Nos. 30 and 32) and the submissions of the parties, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 30) is denied, and Defendant's Motion for Summary Judgment (Docket No. 32) is granted in part and denied in part, as follows:

> 1.  Summary Judgment is granted in favor of Defendant as to the entirety of Plaintiff's breach of contract claim;
>
> 2.  Summary Judgment is granted in favor of Defendant as to the following bad faith allegation:
>
>> a.  In failing to timely obtain records and failing to inform Plaintiff as to reasons for delay in payment; and
>>
>> b.  The daily benefit amount under the Policy is $300.00;
>
> 3.  Summary Judgment is denied as to the following bad

---

[8]Plaintiff further requests that I consider the conduct of the Defendant during the pendency of litigation to support its position that Defendant acted in bad faith regarding the issues of whether Greenery is a hospital under the Policy and whether Plaintiff is entitled to a $600.00 daily benefit. (Docket No. 41, p. 7-8; Docket No. 31, pp. 14-15).  As noted previously, Greenery is no longer a part of this case and, as such, the issue is moot.  With regard to the $600 daily benefit, I decided that under the Policy, Plaintiff is only entitled to a $300.00 daily benefit, such that Plaintiff's bad faith claim in this regard cannot survive.  Since these issues are moot, I need not consider said conduct.

faith allegations:

       a.   In initially denying benefits based on intoxication; and

       b.  In initially denying benefits for Plaintiff's care at Healthsouth Harmarville.

A settlement conference for the above referenced matter is scheduled for Friday, June 1, 2007 at 10:00 A.M. before the undersigned in Suite 3280, Third Floor, of the U.S. Post Office & Courthouse.  Counsel are to have settlement authority and parties are to be either present or available by telephone.  Counsel are to fax their position letters three (3) days before the conference.


BY THE COURT:




/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge